## THE NORDFARER.

### (District Court, E. D. New York.   December 28, 1901.)

SHIPPING—LIABILITY OF SHIP FOR INJURY OF EMPLOYE—DEFECTIVE APPLIANCES.
    The use by a steamship of an ordinary nail as a substitute for a steel pin in the machinery of a winch, the nail being much smaller than the pin which had been provided by the maker of the machinery, and also subjected to an additional strain because it did not fill the socket for which the pin was designed, was negligence which rendered the ship liable for an injury to a workman resulting from the giving way of the nail, notwithstanding the previous use of similar nails without accident for 18 months.

In Admiralty.   Action in rem by John Bryan for personal injury.

Francis A. McCloskey (Peter S. Carter, of counsel), proctor for libelant.

Convers & Kirlin, proctors for claimant.

THOMAS, District Judge.   The libelant seeks to recover for personal injuries sustained while acting as a rigger on the steamship Nordfarer.   By means of the winch, the cargo boom was hoisting, while the libelant took in the slack of the line passing around the drum.   The pin that passed through the lever and quadrant of the winch, to keep it in gear, proved insufficient.   Hence the winch became ineffective, and the boom, unsustained, fell.   The accident happened so quickly that the libelant's leg was caught in the running rope, and was carried against the hatch coaming, whereby it suffered a compound fracture.

The pin is alleged to have had two vices contributing to the accident:   (1) It was so soft that it bent; (2) it was too small to fill the aperture for which it was intended, and hence was not sufficiently strong.   The quality of the pin was not ascertainable by inspection, nor by any test other than bending or otherwise trying it.   It was a mere nail, taken from many.   Others of the nails could have been tried, and the probable quality of the one in question ascertained.   But these nails had been used for 18 months, and no inherent defect in quality had developed.   It may be that this would be a fair test of the general quality of the nails, and, if they were appropriate in other respects, this experience might be regarded as sufficient to excuse the ship from failure to make other proof of quality.   But the nails were temporary expedients, not intended for the use to which they were devoted, and palpably not adjusted to the machine.   The winch may be presumed to have been planned and constructed with such mechanical skill and completeness that each part coacted with the other parts, and was enabled to bear the maximum strain that might be demanded of it in use.   Hence provision was made for a pin of a particular size, and that size was indicated by the aperture which it was to enter.   Instead of employing a piece of steel, adjusted to and filling the place, the claimant was contented to use an ordinary nail, which did not fill the socket, but allowed the lever to work upon the pin, thereby increasing the strain upon it.   The inquiry is whether the claimant could justly discard an appropriate and

intended suitably fitting pin, of a determined size, and insert an ordinary nail, in dimension less than the diameter of the hole, whereby it would be subjected to the free play of the lever and to additional burden. It is difficult to escape the conclusion that the nail was a mere convenient resource, unsuited to the duty required of it, and obviously not contemplated in the fashioning and adaptation of the parts. The claimant should have observed what was required, for the mechanism was plain to see. But it is answered that similar nails had been used for 18 months without accident. If so, this was due more to good fortune than merited immunity. Eighteen months of negligence does not establish the fulfillment of duty, but only that, until the time of accident, the burden had not been too great for the nail.

There should be great hesitation in holding that ordinary care was employed in the machinery appropriated by the ship to the use of a stevedore, where one of the technical parts of the machine was absent, and an ordinary but insufficient nail inserted for the purpose of performing the duty of such pin. The lack of duty is not in selecting a pin which was a mere nail, but in the selection of a nail which from its size was not in accordance with the plan and provisions of the winch. Had the nail fitted closely, and had it been of good quality, such as the nails in the present case usually proved to be, it might be regarded as satisfactory substitution for the pin which the maker and adjuster of the machine had thought worthy of use. The winchman was not negligent regarding any duty he owed to the libelant. Even if he joined negligently in the use of the pin, the ship is not relieved.

The libelant has been seriously injured, and while he may improve, and may be able to perform manual labor, yet he has been for some time incapacitated, and will not be normal in the future, nor will he be able to resume his service as a rigger. Certainly $2,650 is a reasonable compensation, and there will be a decree for that sum, with costs.